UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DURRELLE D. BOWENS                          CIVIL ACTION

VERSUS                                      NO. 17-2648

SANDY MCCAIN, WARDEN                        SECTION "J"(4)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual and Procedural Background

The petitioner, Durrelle D. Bowens ("Bowens"), is a convicted inmate incarcerated in the Avoyelles Correctional Center in Cottonport, Louisiana.[2]  On July 7, 2011, Bowens and a co-defendant, Lashanda Watson, were indicted by an Orleans Parish Grand Jury wherein Bowens was charged in count one with second degree murder and both were charged in count two with obstruction of justice in connection with the murder.[3]  The second count was later quashed as to

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 3.

[3]St. Rec. Vol. 1 of 6, Indictment, 7/7/11 (as amended 1/23/12).

Bowens and amended on February 6, 2012, as to Watson to charge her as an accessory after the fact.[4]  Watson eventually entered a plea of guilty to that charge.[5]

The record reflects that, on March 24, 2011, at approximately 11:00 a.m., Toriano "Tito" Livas visited Eddie St. Cyr's Auto Shop located at 2135 South Derbigny Street.  He was there to collect a payment he was owed for the rental of auto shop machinery from his auto shop, which he had recently closed due to medical issues.[6]  At around the same time, Bowens, his girlfriend, Watson, his brother, Chad Bowens, and Chad's girlfriend, Jonece Duncan, along with their one year old son, C.B., arrived at St. Cyr's Auto Shop to check on their mother's truck, which was being painted.

As Livas was leaving the shop, he became involved in a verbal dispute with Bowens and Chad.  The dispute quickly escalated into a physical altercation.  Ultimately, a gun battle erupted between Livas and Bowens.  When both men ran out of ammunition, Livas attempted to run away, but Bowens reloaded his gun and shot Livas in the back of his leg.  Livas attempted to get away, and Bowens shot him again.  As Livas was lying on the ground pleading for his life, Bowens again fatally shot Livas several more times in the head and torso.  Bowens fled the scene in a black Acura MDX SUV with Watson driving the vehicle.  The vehicle was abandoned in the 2100 block of Clara Street.  Before abandoning the vehicle, the registration documents and temporary license plate were removed.  Bowens then fled to Texas where he was ultimately apprehended.

---

[4]St. Rec. Vol. 1 of 6, Indictment, 7/7/11 (as amended 2/6/12); Trial Minutes, 1/23/12; Trial Court Order, 1/23/12; Motion to Quash, 1/23/12.

[5]St. Rec. Vol. 1 of 6, Minute Entry, 2/6/12.

[6]The facts were taken from the published opinion of the Louisiana Fourth Circuit Court of Appeal.  *State v. Bowens*, 156 So.3d 770, 772-73 (La. App. 4th Cir. 2014); St. Rec. Vol. 5 of 6, 4th Cir. Opinion, 2014-KA-0416, pp. 2-3, 12/10/14.

Bowens separately was tried before a jury on January 23 through 25, 2012, and was found guilty of the lesser included offense of manslaughter.[7]  At a hearing held on February 1, 2012, the Trial Court sentenced Bowens to serve forty (40) years in prison at hard labor.[8]  The Court also denied the motion to reconsider the sentence on May 13, 2012.[9]

On direct appeal to the Louisiana Fourth Circuit Court of Appeal, Bowens's counsel asserted two errors:[10] (1) the evidence was insufficient to support the verdict; and (2) the sentence was excessive.  Bowens filed a pro se supplemental brief asserting the following issues:[11]  (1) the assistant district attorney was not a competent witness; (2) the assistant district attorney's testimony was inadmissible hearsay which caused the jury to be biased; (3) the prosecution made improper remarks; (4) the jury was not fully instructed on the aggressor doctrine; (5) the record was incomplete and denied him proper review; (6) evidence was withheld; and (7) the cumulative errors caused an unfair trial.

On December 10, 2014, the Louisiana Fourth Circuit affirmed Bowen's conviction and denied relief on each of his claims.[12]  The Court found the two counsel-filed claims were without merit.  The Court also found no merit in Bowen's pro se claims numbers 1, 3, 6, 7 and part of 5 (incomplete record).  The Court found pro se claims 2, 4, and part of 5 (claim not reviewed) to be

---

[7]St. Rec. Vol. 1 of 6, Trial Minutes, 1/23/12; Trial Minutes, 1/24/12; Trial Minutes, 1/25/12; Jury Verdict, 1/25/12; St. Rec. Vol. 2 of 6, Trial Transcript, 1/23/12; St. Rec. Vol. 3 of 6, Trial Transcript, 1/25/12.

[8]St. Rec. Vol. 1 of 6, Sentencing Hearing Minutes, 2/1/12; Sentencing Transcript, 2/1/12.

[9]St. Rec. Vol. 1 of 6, Hearing Minutes, 5/31/13; Trial Court Order, 5/31/13; Motion to Reconsider Sentence, 2/27/12; Motion to Reconsider Sentence, 2/29/12.

[10]St. Rec. Vol. 5 of 6, Appeal Brief, 2014-KA-0416, 7/4/14.

[11]St. Rec. Vol. 5 of 6, Pro Se Supplemental Brief, 2014-KA-0416, 9/2/14.

[12]*Bowens*, 156 So.3d at 770; St. Rec. Vol. 5 of 6, 4th Cir. Opinion, 2014-KA-0416, 12/10/14.

procedurally barred from review for lack of a contemporaneous objection under La. Code Crim. P. art. 841.

The Louisiana Supreme Court denied Bowens's counsel-filed writ application on October 23, 2015.[13]  Bowens's conviction was final under federal law ninety (90) days later, on January 21, 2016, when he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (time for filing for certiorari with the United States Supreme Court is included in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

Bowens filed a motion to amend his sentence with the Trial Court on February 15, 2016.[14] The Trial Court denied the motion on April 1, 2016, finding that it was procedurally improper under La. Code Crim. P. art. 841.[15]  Bowens did not seek review of this order.

On April 22, 2016, Bowens submitted an application for post-conviction relief to the Trial Court asserting the following grounds for relief:[16] (1) the Trial Court failed to instruct the jury on the aggressor doctrine; (2) counsel was ineffective for failure to request a special instruction or object to the Trial Court's failure to instruct the jury on the aggressor doctrine.  The Trial Court denied relief on May 25, 2016.[17]  The Court held that the first claim was repetitive of the issue addressed on direct appeal and was barred from further review under La. Code Crim. P. art. 930.4, and it otherwise failed to state a claim for post-conviction relief under La. Code Crim. P. art. 930.3.

---

[13]*State v. Bowens*, 179 So.2d 598 (La. 2015); St. Rec. Vol. 5 of 6, La. S. Ct. Order, 2015-K-0066, 10/23/15; La. S. Ct. Writ Application, 15-K-66, 1/9/15; La. S. Ct. Letter, 2015-K-66, 1/12/15.

[14]St. Rec. Vol. 6 of 6, Motion to Amend and Modify, 2/19/16 (dated 2/15/16).

[15]St. Rec. Vol. 6 of 6, Trial Court Order, 4/1/16.

[16]St. Rec. Vol. 6 of 6, Application for Post-Conviction Relief, 4/28/16 (dated 4/22/16).

[17]St. Rec. Vol. 6 of 6, Trial Court Order, 5/25/16.

The Court further resolved that Bowens failed to prove that he received ineffective assistance based on the trial evidence, which showed that Bowens did not act in self-defense and Bowens was the aggressor throughout the incident, rendering the aggressor doctrine inapplicable to his case.

The Louisiana Fourth Circuit denied Bowens's related and untimely[18] writ application on August 5, 2016, finding no error in the Trial Court's ruling.[19]  The Louisiana Supreme Court did not consider Bowens's subsequent writ application finding it to have been untimely filed under La. S. Ct. Rule X§5.[20]  The Court also denied Bowens's request for reconsideration without stated reasons.[21]

## II.     **Federal Habeas Petition**

On April 4, 2017, after the correction of certain deficiencies, the clerk of this Court filed Bowens's petition for federal habeas corpus relief in which he asserted the following grounds for relief:[22] (1) the State failed to present sufficient evidence to support the manslaughter verdict; (2) the sentence is unconstitutionally excessive; (3) the Trial Court failed to properly instruct the jury on the aggressor doctrine; (4) he was denied effective assistance of counsel.

The State filed a response in opposition to the petition urging that Bowens's third claim is in procedural default, his fourth claim is unexhausted and now technically defaulted, and the

---

[18]Under La. App. Rule 4-3, Bowens had thirty days from issuance of the Trial Court's order to file his writ application in the appellate court.  The Trial Court ruled on May 25, 2016, and the writ application was submitted by Bowens on July 5, 2016.  St. Rec. Vol. 6 of 6, 4th Cir. Writ Application, 2016-K-0772, 7/27/16 (dated 7/5/16).

[19]St. Rec. Vol. 6 of 6, 4th Cir. Order, 2016-K-0772, 8/5/16; 4th Cir. Writ Application, 2016-K-0772, 7/27/16 (dated 7/5/16).

[20]*State ex rel. Bowens v. State*, 205 So.3d 890 (La. 2016); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2016-KH-1845, 11/7/16; La. S. Ct. Writ Application, 2016-KH-1845, 10/13/16 (dated 9/29/16).  La. S. Ct. Rule X§5 allows thirty days from issuance of the appellate court's order to file an application for review.

[21]*State ex rel. Bowens v. State*, 215 So.3d 262 (La. 2017); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2016-KH-1845, 1/23/17; Request for Reconsideration, 16-KH-1845, 12/15/16 (dated 12/7/16).

[22]Rec. Doc. No. 3.

remaining two claims are without merit.[23]  Bowens asserts in response that his procedural default on both claims should be overlooked by this Court, because he did not timely receive a copy of the state appellate court's post-conviction ruling.[24]

## III.    Generals Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[25] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on March 17, 2017.[26]  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default."  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State asserts that Bowens's challenge to the jury instructions is in procedural default based on the state courts' ruling that there was no contemporaneous objection lodged at trial as required by La. Code Crim. P. art. 841.  This was the ruling given on direct appeal when the issue

---

[23]Rec. Doc. No. 9.

[24]Rec. Doc. No. 10.

[25]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[26]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of this Court received Bowens's original petition on March 28, 2017, and it was eventually filed on April 4, 2017, after correction of certain deficiencies and payment of the filing fee.  Bowens dated his signature on the original pleadings on March 17, 2017, which is the earliest date appearing in the record on which he could have presented the pleadings to prison officials for mailing to a federal court.

was first raised.  Bowens reasserted the issue in his post-conviction application, when the reviewing state courts declined to reconsider the issue in light of the ruling on appeal, citing La. Code Crim. P. art. 930.4.  Bowens's effort to reassert the issue does not alter the fact that the claim was procedurally barred from review on direct appeal.  The bar under La. Code Crim. P. art. 930.4(A) relied on by the post-conviction courts precludes the Louisiana courts from reviewing a post-conviction claim which was already "fully litigated" on direct appeal.  *Bennett v. Whitley*, 41 F.3d 1581 (5th Cir. 1994).  The presumption in the rule is that the claims were not new or different from something previously litigated and resolved on appeal by the higher state courts.  *Id*., at 1583. For purposes of federal habeas review, "the bar imposed by article 930.4(A) is not a procedural bar in the traditional sense, nor is it a decision on the merits."  *Id*.  A federal habeas court simply "look[s]-through" the ruling on collateral review and considers the reasons and findings in the direct appeal proceeding where the claims were first litigated.  *Id*., 41 F.3d at 1582-83.  For these reasons, this federal habeas court must consider the ruling determined by the state courts on direct appeal, when the issue was first addressed.  Therefore, this Court will address the procedural bar to the claim under La. Code Crim. P. art. 841 as applied by the appellate court on direct appeal.

The State also argues that Bowens did not properly exhaust state court review of his ineffective assistance of counsel issue, and the issue is now in technical procedural default. Bowens raised this issue in his state post-conviction application which was not properly presented to the State's highest court.  The Louisiana Supreme Court declined to consider his writ application, because it was not timely filed pursuant to La. S. Ct. Rule X§5.  The Court further decreed that Bowens has no remaining post-conviction review available to him in the Louisiana courts.  As such, the State argues that Bowens' unexhausted claim is now technically barred from state court review and in procedural default.  However, Bowens's argues here as he did in the

Louisiana Supreme Court that he had good cause for his failure to pursue timely review in the Louisiana Supreme Court, because the appellate court delayed sending him a copy of its ruling causing his review efforts to be untimely.  Nevertheless, considering the State's assertion of the state court imposed technical exhaustion/procedural bar, the State has not addressed or considered the propriety of the procedural bar to the ineffective assistance of counsel claim under the United States Supreme Court's holdings in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013).[27]  The Court need not require argument on this point, however, because this unexhausted ineffective assistance of counsel claim is not substantial and is wholly meritless, and this Court will dispose of the claim as meritless.  28 U.S.C. § 2254(b)(2).

## IV.   Procedural Default (Claim No. 3)

The Court finds that Bowens's third claim, that the state trial court erred in failing to instruct the jury on the aggressor doctrine, is in procedural default and is barred from review in this federal habeas court.  The record reflects that, in the last reasoned opinion on the issue, the Louisiana Fourth Circuit found that Bowens did not preserve the issue for appellate review by contemporaneous objection at trial as required by La. Code Crim. P. art. 841.

### A.   Independent and Adequate State Ground

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment.  *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Amos v. Scott*, 61 F.3d 333, 338

---

[27]In *Martinez*, the Supreme Court held that a procedural bar imposed by a state court "'will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'"  *Trevino*, 569 U.S. at 417 (quoting *Martinez*, 566 U.S. at 17).  As shown in this report, Bowens's has no substantial claim of ineffective assistance of counsel that would invoke any relief under *Martinez*.

& n.15 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)).  The "independent and adequate state ground" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review.  *Coleman*, 501 U.S. at 731-32; *Amos*, 61 F.3d at 338.  This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.  Federal review is barred <u>even if</u> the state court alternatively address the merits.  *See Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (citing *Harris*, 489 U.S. at 264 n.10).

A dismissal is independent of federal law when the last state court "clearly and expressly" indicated that its judgment rests on a state procedural grounds that bars review of the claim.  *Amos*, 61 F.3d at 338.  The state-law ground may be a substantive rule dispositive of the case or a procedural bar to adjudication of the claim on the merits.  *See Wainwright v. Sykes*, 433 U.S. 72, 81-82, 90 (1977).  The question of the adequacy of a state procedural bar is itself a federal question.  *Beard v. Kindler*, 558 U.S. 53, 60 (2009) (citing *Lee v. Kemna*, 534 U.S. 362, 375 (2002)).  To be adequate, the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  *Walker v. Martin*, 562 U.S. 307, 315-17 (2011); *Glover*, 128 F.3d at 902.  A state procedural rule, however, "can be 'firmly established' and 'regularly followed,' - even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others."  *Beard*, 558 U.S. at 60 (citations omitted).

In evaluating the adequacy of the rules applied to bar a petitioner's claim, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law.  *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (quoting *Estelle v. McGuire*, 502 U.S. 62,

67-68 (1991) and *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Rather, a federal court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the underlying proceeding fundamentally unfair. *See Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAffee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985) and *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)). In keeping with this, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review. *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable on the particular facts of the case. Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived."

*United States ex rel. Bradley v. Clark*, No. 99-C-1785, 2002 WL 31133094, at *4 n.2 (N.D. Ill. July 18, 2002).

For this reason, when state courts apply a procedural bar that has no foundation in the record or basis in state law, federal courts need not honor that bar. *See e.g., Davis v. Johnson*, No. 00CV684-Y, 2001 WL 611164, at *4 & n.10 (N.D. Tex. May 30, 2001); *Johnson v. Lensing*, No. 99-0005, 1999 WL 562728, at *4 (E.D. La. Dec. 5, 2011); *Poree v. Cain*, No. 97-1546, 1999 WL 518843, at *4 (E.D. La. Jul. 20, 1999). However, it is not within the federal court's province to disagree with the application of the bar; it is only to determine its adequacy. *Lee v. Cain*, No. 03-2626, 2004 WL 2984274, at *1 n.2 (E.D. La. Dec. 6, 2004) (Vance, J.) (art. 930.3 applied to bar ineffective assistance of counsel claim). Thus, where such a foundation and basis does exist, as it does in this case, the bar must stand.

In this case, the Louisiana courts relied upon La. Code Crim. P. art. 841 to support its finding that Bowens failed to preserve appellate review of his jury instruction challenge. Under

La. Code Crim. P. art. 841(A) "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."[28]  *See Perez v. Cain*, No. 04-1905, 2008 WL 108661, at \*16 (E.D. La. Jan. 8, 2008).  The state court's ruling was based on Louisiana law setting forth the procedural requirements for preservation and presentation of claims on post-conviction review. It is well settled that this type of "contemporaneous objection" rule is an "independent and adequate" state procedural ground which bars federal habeas corpus review.  *Wainwright*, 433 U.S. at 87-88.  The ruling, therefore, was independent of federal law and based strictly on state procedural requirements.  *See Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

The failure to preserve a claim under La. Code Crim. P. art. 841 has also been repeatedly recognized as an adequate state ground which bars review by the federal courts in a habeas corpus proceeding.  *See Perez*, 2008 WL 108661, at \*16; *Toney v. Cain*, 24 F.3d 240, 1994 WL 243453, at \*2 (5th Cir. May 20, 1994) (Table, Text in Westlaw); *Proctor v. Butler*, 831 F.2d 1251, 1253 (5th Cir. 1987); *Riggins v. Butler*, 705 F. Supp. 1205, 1208 (E.D. La. 1989); *Marshall v. Cain*, No. 04-219, 2006 WL 2414073, at \*1 (E.D. La. Aug. 18, 2006) (Zainey, J.) (Order adopting Report and Recommendation); accord, *Duncan v. Cain*, 278 F.3d 537, 541 (5th Cir. 2002) (citing *Wainwright*, 433 U.S. at 87-88 (Louisiana's contemporaneous objection rule is an adequate state bar to federal review of a defaulted claims)).  The procedural bar under La. Code Crim. P. art. 841 is adequate to bar federal habeas review of Bowens's claim challenging the Trial Court's failure to instruct the jury on the aggressor doctrine.

For these reasons, the bar imposed by the state courts to review of Bowens's third claim is supported by the record and adequate to foreclose review by this federal court.  Because the

---

[28]*See also*, La. Code Crim. P. art. 801: "A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error."

Louisiana courts' decisions rested on independent and adequate state rules of procedural default, this court will not review the claim unless Bowens can establish one of the following exceptions.

### B.   <u>Cause and Prejudice</u>

A federal habeas petitioner may be excused from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262; *Engle v. Isaac*, 456 U.S. 107, 128-29 & n.33 (1982))

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id*. at 486. As will be discussed later in this report, to the extent petitioner claims that his counsel was ineffective in failing to object to the trial court's failure to include the charge on the aggressor doctrine, he has not established his claim under either prong of *Strickland*, and his claim does not stand as cause to overcome this procedural bar. Petitioner has not asserted, and the Court's review of the record does not support a finding, that any factor external to the defense prevented him from raising the claim in a procedurally proper manner. The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n.43). Petitioner's defaulted claim is therefore

procedurally barred from review by this federal habeas corpus court. *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded where petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).[29]

Having failed to show an objective cause for his default, the Court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. *Ratcliff v. Estelle*, 597 F.2d 474, 477-78 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

### C.   Fundamental Miscarriage of Justice

Bowens may avoid this procedural bar only when a fundamental miscarriage of justice will occur if the merits of his claims are not reviewed. *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). To establish a fundamental miscarriage of justice, a petitioner must provide the court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); accord *Murray*, 477 U.S. at 495-96; *Glover*, 128 F.3d at 902-03. To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 & n.33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."). When

---

[29]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument *sua sponte* but may do so in its discretion. *Id.*

the petitioner has not adequately asserted his actual innocence, the procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Bowens does not present any claim, and the record contains nothing, to suggest or establish his actual innocence. His claims instead address alleged procedural and evidentiary errors and not his actual innocence. He fails to present any evidence or argument of the kind of actual innocence that would excuse the procedural default. He, therefore, has failed to overcome the procedural bar to his claim, and his third claim, alleging that the trial court erred in failing to charge the jury on the aggressor doctrine, should be dismissed with prejudice.

## V.    Standards of a Merits Review of the Remaining Claims

### A.    Claims Reviewed on the Merits by the State Courts

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to, or involved an

unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford*

*v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### B.    Claims Not Reviewed on the Merits by the State Courts

The AEDPA's deferential standards of review apply only to claims adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d); *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003). When a petitioner's claim was not considered by (or exhausted in) the state courts, this Court must utilize the pre-AEDPA *de novo* standards of review. *Id.*, at 598 (citing *Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying *de novo* standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); *see also, Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009).

Therefore, the Court will consider *de novo* Bowens's ineffective assistance of counsel claim, which was not properly exhausted in the state courts. The Court recognizes and has utilized the appropriate standard for its review of each of petitioner's claims even if the standard is not specifically reiterated in the following sections of the report.

**VI.**    **Sufficiency of the Evidence (Claim No. 1)**

Bowens claims that the State failed to present sufficient evidence to prove manslaughter. Bowens argues that the evidence established that Livas was the aggressor and that he only reloaded his gun because Livas was still firing his weapon.  He also contends that, in light of this, the State also failed to prove that he did not act in self-defense.

This claim was raised by his counsel on direct appeal and denied by the state courts as meritless.  Relying on the standards in *Jackson v. Virginia*, 443 U.S. 307 (1979) and related state case law, the Louisiana Fourth Circuit determined that the evidence established that Bowens and his brother instigated the initial fight when they got out of their car and beat Livas, who was recovering from a partial colectomy, before St. Cyr and Baxter arrived to stop the beating.  The Court held that the evidence established that Bowens did not act in self-defense when, after the initial exchange of fire, he reloaded his gun as Livas retreated and continued to shoot even after Livas fell to the ground.  This was the last reasoned opinion on the issue.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991).

Claims of insufficient evidence present a mixed question of law and fact.  *Davila v. Davis*, 650 F. App'x 860, 866 (5th Cir. 2016); *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995).  The Court must therefore give deference to the state courts' findings unless the decision was contrary to, or involved an unreasonable application of Supreme Court law.  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

The appropriate standard for determining the sufficiency of evidence is that set forth in *Jackson*, relied on by the state appellate court, which requires a court to determine whether, after viewing the record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Jackson*, 443 U.S. at 319; *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008); *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011). Louisiana law allows for a crime to be proven by both direct and circumstantial evidence.

In Louisiana, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. Ann. § 15:438. However, on federal habeas corpus review, the court does not apply this state law, "reasonable hypothesis" standard, and instead must apply the *Jackson* and AEDPA standards of review. *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992) (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)). To the extent petitioner relies on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the *Jackson* standard to be applied instead of a sufficiency of the evidence test . . . . Ultimately, all evidence, both direct and circumstantial, must be sufficient under *Jackson* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." *State v. Porretto*, 468 So.2d 1142, 1146 (La. 1985); *accord State v. Williams*, 693 So.2d 204, 209 (La. App. 4th Cir. 1997). The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." *State v. Maxie*, 614 So.2d 1318, 1321 (La. App. 3d Cir. 1993); *accord Williams*, 693 So.2d at 209. The appropriate standard for this Court on habeas review remains *Jackson*.

The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court is to consider all of the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir. 2009) (quoting *Jackson*, 443 U.S. at 324) (*Jackson* standard relies "upon the record evidence adduced at the trial."). The review of the sufficiency of the evidence,

however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). A reviewing federal habeas court, therefore, is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (1995) (citing *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985)). All credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)). Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n.16).

In this case, Bowens was charged with second degree murder and was convicted of the responsive verdict of manslaughter. In Louisiana, manslaughter is defined in relevant part as a murder that would otherwise be second degree murder,[30] but was "committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his

---

[30]In Louisiana, second degree murder is in pertinent part "the killing of a human being . . . when the offender has a specific intent to kill or to inflict great bodily harm. . . ." La. Rev. Stat. Ann. § 14:30.1A(1). Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the proscribed criminal consequences to follow his act. La. Rev. Stat. Ann. § 14:10(1); *State v. Lindsey*, 543 So.2d 886, 902 (La. 1989).

self-control and cool reflection." La. Rev. Stat. Ann. § 14:31(A)(1); *State v. Logan*, 34 So.3d 528 (La. App. 2d Cir. 2010); *State v. Quiambao*, 833 So.2d 1103 (La. App. 2d Cir. 2002). The provocation element will not reduce the defendant's culpability if "the offender's blood had actually cooled, or . . . an average person's blood would have cooled, at the time the offense was committed." *Id*. "Sudden passion" and "heat of blood" are not elements of the offense of manslaughter; rather, they are mitigatory factors that may reduce the grade of the higher murder offense. *State v. Bauman*, 15 So.3d 177, 185 (La. App. 5th Cir. 2009), *writ denied*, 34 So.3d 300 (La. 2010). The burden is on the defendants to prove to the jury that the mitigatory factors by a preponderance of the evidence. *Bauman*, 15 So.3d at 185.

Louisiana law also provides that a homicide is justifiable when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger. La. Rev. Stat. Ann. § 14:20(A)(1). The determination of a defendant's culpability when self-defense is raised rests on a two-fold test under Louisiana law: (1) whether, given the facts presented, the defendant could reasonably have believed his life to be in imminent danger; and (2) whether deadly force was necessary to prevent the danger. *Hyman v. Cain*, No. 14-1123, 2015 WL 3755867, at *10 (E.D. La. Jun. 16, 2015) (Order adopting Report and Recommendation) (citing *State v. Theriot*, 963 So.2d 1012, 1020 (2008)). The State has the burden of proving that petitioner did not act in self-defense. *Trosclair v. Cain*, No. 12-2958, 2014 WL 4374314, at *7 (E.D. La. Sept. 2, 2014) (Order adopting Report and Recommendation) (citing *State v. Lilly*, 552 So.2d 1036, 1039 (La. App. 1 Cir. 1989)). However, "[a] person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner

that his adversary knows or should know that he desires to withdraw and discontinue the conflict."
La. Rev. Stat. Ann. § 14:21.

In this case, the defense did not dispute that Bowens shot the victim. Instead, the defense attempted to assert that Livas was the aggressor and that Bowens simply acted in self-defense. The jury, however, heard ample testimony to disprove the self-defense theory and prove Bowens to be the aggressor. The evidence showed that shortly after he arrived at St. Cyr's garage, Bowens beat Livas while he was being held on the ground.[31] When the beating was interrupted by Eddie St. Cyr and Chad Baxter, Bowens was the first to pull out a gun and announce that the matter was not over.[32] Livas was able to get away and went to sit in the open door of his car, bleeding from the head.[33] He was not seen with a gun when the first shots rang out.[34] He and Bowens then exchanged gunfire until they both ran out of ammunition.[35] At that point Livas started to quickly move away from the area.[36] Bowens, however, reloaded his gun and shot Livas from behind.[37] When Livas fell to the ground and dropped his empty gun, Bowens walked over and shot Livas several more times, ignoring Livas's pleas for his life.[38]

---

[31] St. Rec. Vol. 3 of 6, Trial Transcript, pp. 59-60 (Eddie St. Cyr), pp. 83-84 (Chad Baxter), 1/25/12.

[32] *Id.*, pp. 60-62 (St. Cyr), pp. 84-85 (Baxter).

[33] *Id.*, p. 62 (St. Cyr); p. 85 (Baxter).

[34] *Id.*, pp. 86, 87 (Baxter).

[35] *Id.*, pp. 62-63 (St. Cyr); p. 85 (Baxter).

[36] *Id.*, pp. 63 (St. Cyr); p. 98 (Mallory Gonzales).

[37] *Id.*, pp. 63 (St. Cyr); pp. 98-99 (Gonzales).

[38] *Id.*, pp. 63-65 (St. Cyr), p. 86 (Baxter). At least one witness did not see a gun in Livas's hand when he was shot and fell to the ground. *Id.*, pp. 101, 102 (Baxter).

Bowens testified that he did not start the fight with Livas, and that Livas and his brother were in a verbal altercation that became physical, so he joined the scuffle.[39]  He also stated that he tried to leave after the fight, and it was Livas who shot into his car first; he only shot back to protect his the girlfriend and baby in the car.[40]  He also testified that after he reloaded his gun, he looked up to see Livas running towards him with his gun raised; so he shot Livas, saw him fall, and then got back in the car to leave.[41]

Bowens now contends that the other witness testimony was not believable and was insufficient to disprove his claims of self-defense.  The jury, however, obviously found the other testimony credible and Bowens's testimony not sufficient proof of self-defense.  As an initial matter, where, as here, a petitioner's insufficient evidence claim is based on arguments concerning witness credibility, a federal habeas court generally will not grant relief.  *See Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."); *Ramirez*, 398 F.3d at 695 ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); *McCowin v. Scott*, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994); *Phillips v. Cain*, No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), *adopted*, 2012 WL 2565025, at *1 (E.D. La. July 2, 2012); *Picou v. Cain*, No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

In addition, the record supports the conclusion that a reasonable jury would have found sufficient evidence to reject the self-defense theory.  As indicated, Bowens himself admitted that he was the first to display a weapon at the scene.  He offered conflicting testimony as to whether

---

[39]*Id.*, pp. 145-46 (Bowens).

[40]*Id.*, pp. 147-48 (Bowens).

[41]*Id.*, pp. 148, 149 (Bowens).

Livas shot first or he shot at Livas from the car first before Livas could shoot him. Furthermore, the evidence from the other witnesses for the State indicated that Bowens never tried to leave the scene before the shooting and in fact was standing just a few feet away from St. Cyr when the initial exchange of gunfire began after the fist fight. These witnesses also testified, consistent with the forensic evidence, that Bowens was not in the car and instead was standing over the wounded Livas when he shot Livas multiple times from the second clip of ammunition. In other words, there was sufficient evidence to establish that Bowens did not act in self-defense nor was the shooting justified when he fatally wounded Livas, who was no longer armed with a loaded weapon, was attempting to flee the area, and was wounded on the ground unable to continue his efforts to get away. The evidence established that, at the time of the multiple shots into Livas, the initial altercation and exchange of fire had ended, Livas had no ammunition, and Livas was attempting to leave the area. Bowens on the other hand, reloaded his weapon, shot Livas in the back of the leg, and then walked over to Livas on the ground and continued to fire multiple shots into him as he begged for his life.

Thus, as found by the state courts, considering the facts in a light most favorable to the prosecution, the jury made a rational decision to convict Bowens of manslaughter and in this case find that he was not justified and did not act in self-defense. *See Santellan*, 271 F.3d at 193.

Bowens has failed to establish that there was insufficient evidence to prove his guilt and to disprove the self-defense theory under the *Jackson* standard. The state courts' denial of relief was not contrary to, or an unreasonable application of, Supreme Court law. Bowens is not entitled to relief on this claim.

**VII.    No Excessive Sentence (Claim No. 2)**

Bowens alleges that the forty-year sentence for manslaughter imposed by the state trial court was excessive under the circumstances of his case. Bowens asserts that the trial court should not have sentenced him without a presentence investigation report. He also claims that he was a college student at the time of this incident and otherwise trained in the use of handguns, and should not have received the maximum sentence simply because he was originally charged with second degree murder.

The Louisiana Fourth Circuit addressed this claim on direct appeal. The Court noted that the state trial court properly and adequately considered the sentencing guidelines and articulated the factual basis for the sentence, relying in part on the impact on the victim's wife, the number of shots taken by Bowens, the fact that he stood over the victim to continue shooting and his continued claim of self-defense when he clearly was the aggressor at that time. The Court also compared Bowen's sentence to other similar cases for consistency. This was the last reasoned opinion on the issue. *See Ylst*, 501 U.S. at 802.

To the extent Bowens challenges the state trial courts' compliance with Louisiana's sentencing laws and the Louisiana Constitution, his claim is not the concern of federal habeas review. *Butler v. Cain*, 327 F. App'x 455, 457 (5th Cir. 2009). Instead, federal courts afford broad discretion to a state trial court's sentencing decision that falls within statutory limits. *Haynes v. Butler*, 825 F.2d 921, 923-24 (5th Cir. 1987); *see also*, *Turner v. Cain*, 199 F.3d 437, 1999 WL 1067559, at *3 (5th Cir. Oct. 15, 1999) (Table, Text in Westlaw). When a state sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence unless it is shown to be grossly disproportionate to the gravity of the offense. *See Harmelin v. Michigan*, 501 U.S. 957, 993-95 (1991); *Solem v. Helm*, 463 U.S. 277, 290-91 & n.17 (1983). "[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross

disproportionality,'" a court then considers (a) the sentences imposed on other criminals in the same jurisdiction; and (b) the sentences imposed for commission of the same offense in other jurisdictions. *Smallwood v. Johnson*, 73 F.3d 1343, 1346-47 (5th Cir. 1996); *McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992). If the sentence is not "grossly disproportionate," in the first instance, the inquiry is finished. *United States v. Gonzales*, 121 F.3d 928 (5th Cir. 1997), *cert. denied*, 522 U.S. 1063 (1998). As the Supreme Court has noted, outside the context of capital punishment, successful proportionality challenges are "exceedingly rare," and constitutional violations are sustained in only "extreme" or "extraordinary" cases. *Ewing v. California*, 538 U.S. 11, 23-30 (2003) (citations omitted); *Lockyer v. Andrade*, 538 U.S. 63 (2003).

For purposes of federal habeas review under the AEDPA standard, an excessive sentence claim presents a question of law. *Chatman v. Miller*, No. 05-1481, 2005 WL 3588637, at *5 (E.D. La. Nov. 9, 2005); *Davis v. Cain*, 44 F. Supp. 2d 792, 798 (E.D. La. 1999); *Jones v. Kaylo*, No. 99-0567, 1999 WL 544680, at *1 (E.D. La. July 26, 1999).

In this case, Bowens was charged with the second degree murder of Livas. He ultimately was convicted after trial of manslaughter and sentenced to forty years in prison. Louisiana law provides that a person convicted of manslaughter shall be imprisoned at hard labor for not more than forty years. La. Rev. Stat. Ann. § 14:31. Bowens's sentence clearly fell within the limits set by the Louisiana legislature. Accordingly, this federal habeas court considers only proportionality compared with sentences imposed in similar cases.

Before imposing sentence on Bowens, the state trial court addressed the facts and circumstances of the case at length and gave specific reasons for imposing sentence for manslaughter. As noted by the state appellate court, the Trial Court discussed the impact on the victim's wife, the unnecessary number of shots taken by Bowens, and the shots taken directly in

Livas as he lied wounded on the ground.  The Court therefore considered the relevant factors necessary to contour and support the sentence under the circumstances of the case.

In addition, a survey of the Louisiana cases in the public domain establishes that Bowens's sentence was not out of line with sentences imposed upon similarly situated defendants.  *See*, *e.g.*, *State v. Soriano*, 192 So.3d 899 (La. App. 3d Cir. 2016) (forty year sentence for manslaughter where first offender stabbed the victim once and after victim retreated, chased him down and stabbed him again); *State v. Jackson*, 211 So.3d 639 (La. App. 2d Cir. 2017) (forty year sentence for manslaughter plea when originally charged with second degree murder where defendant went to victims home and shot him twice in the head when she just meant to scare him); *State v. Yelverton*, 156 So.3d 53 (La. App. 5th Cir. 2013) (forty year sentence for defendant charged with second degree murder and convicted of manslaughter after shooting the victim at close range when victim challenged him to a fight and appeared to be reaching for a gun and then left the victim on the side of the road to die and attempted to clean the vehicle and dispose of evidence); *State v. Lanieu*, 734 So.2d 89 (La. App. 1st Cir. 1999) (forty year sentence for first offender charged with second degree murder and convicted of manslaughter where defendant and the victim had been arguing and cursing at each other before defendant shot the victim twice in the head, claiming he thought the victim was reaching for a gun).

Applying the factors and legal standards discussed above, Bowens has not demonstrated that his forty-year sentence for manslaughter was unconstitutionally excessive or that the state courts' consideration of his excessive sentence claim was contrary to or involved an unreasonable application of clearly established federal law.  He is not entitled to relief on this claim.

**VIII.   Effective Assistance of Counsel (Claim No. 4)**

Bowens asserts that his counsel was ineffective when he failed adequately to focus on the aggressor doctrine and the self-defense theory. Specifically, he claims that his counsel was ineffective when counsel failed to request a special jury instruction or object to the trial court's failure to instruct the jury on the aggressor doctrine.

Bowens asserted this claim on post-conviction review in the state trial court. Relying on the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and related state case law, the Trial Court determined that, in light of the evidence at trial, counsel was not ineffective where the aggressor doctrine would not have aided the defense and would not have altered the outcome of the trial. The Court noted that the Louisiana Fourth Circuit on direct appeal had already resolved that there was evidence beyond a reasonable doubt that Bowens did not act in self-defense and was the aggressor in the initial confrontation, in reloading his gun, and shooting the victim who was already on the ground and pleading for his life. The Louisiana Fourth Circuit found no error in this ruling, and the Louisiana Supreme Court declined to consider Bowens related and untimely-filed writ application. As noted previously, Bowens's failure to exhaust does not prevent this Court from disposing of his meritless claim. 28 U.S.C. § 2254(b).

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). Thus, under the AEDPA, the question before this Court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The Supreme Court's holding in *Strickland*, 466 U.S. at 668, relied upon by the state courts, is the appropriate standard for judging the performance of counsel. In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at

687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002) (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel

unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a

general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.*, at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Pinholster*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2).

For the multitude of reasons already discussed in this report, the evidence at trial negated Bowens's suggestion that he acted in self-defense. The jury's verdict reflects and the state courts repeatedly concluded, the evidence not only disproved self-defense, but it established that Bowens was the aggressor during the most crucial parts of the incident leading to Livas's death. As quoted previously in this report, under La. Rev. Stat. Ann. § 14:21, "… the aggressor or [person] who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict." The credible evidence presented at trial in no way demonstrated that Bowens attempted to withdraw, and in fact the evidence showed that when he could have left, he instead reloaded his gun, tracked Livas, and continued to fatally shoot him as he lay on the ground.

Thus, as resolved by the state courts, an aggressor doctrine jury charge may have acted to Bowens's detriment based on the evidence, especially if the jury had been inclined to consider his self-defense arguments. As already discussed, the state courts' reasonably held that the evidence was sufficient to disprove Bowens's self-defense theory and that decision was not contrary to any

federal precedent. Furthermore, there is nothing in the record to support a finding that the result of the trial would have been different had counsel requested the aggressor doctrine jury charge. *See Washington v. Cain*, No. 04-2539, 2006 WL 3412321, at *4 (W.D. La. Oct. 5, 2006). In light of these findings, counsel did not act deficiently or prejudicially when he failed to urge a meritless or baseless motion for a jury instruction on the aggressor doctrine. *See Parr v. Quarterman*, 472 F.3d 245, 256 (5th Cir. 2006) (counsel is not deficient in failing to present a meritless argument); *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (counsel is not required to make futile motions or frivolous objections); *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995) (attorneys are not required to file meritless motions).

Bowens, therefore, has not established that he is entitled to relief under the *Strickland* standards. His ineffective assistance of counsel claim must be dismissed.

## IX.   <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Durrelle Bowens's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.

1996).[42]

New Orleans, Louisiana, this 13th day of March, 2018.

KAREN WELLS ROBY
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[42]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.